**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
Northern Division

| | |
|---|---|
| **UNIVERSITY OF MARYLAND MEDICAL CENTER, LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| **MARPAI ADMINISTRATORS LLC,** | |
| **SERVE ON RESIDENT AGENT:** Registered Agent Solutions, Inc. 1200 South Pine Island Road Plantation, Florida 33324 | |
| **JOHN DOE HEALTH CARE PLAN, and JOHN DOE HEALTH CARE PLAN SPONSOR**, | |
| Defendants. | |

## COMPLAINT

Plaintiff University of Maryland Medical Center, LLC ("UMMC"), by and through undersigned counsel, submits this complaint against defendants Marpai Administrators, LLC ("Marpai"), John Doe Health Care Plan, and John Doe Health Care Plan Sponsor (together, "Defendants"), and states as follows:

## STATEMENT OF THE CASE

1.     In this action, UMMC seeks reimbursement for medical services that it provided to Cornelius Allen, who was enrolled in a healthcare plan administered by Marpai and governed by the Employee Retirement Income Security Act ("ERISA"). After providing in excess of $1 million in medical services to Mr. Allen, UMMC submitted claims for reimbursement to Marpai.

1

Despite extensive efforts to resolve the matter informally, Marpai has not paid the claims, has ignored UMMC's repeated requests for information, and has not explained in writing the basis for its refusal to pay UMMC.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff UMMC is a Maryland LLC with its principal place of business at 22 S. Greene Street, Baltimore, Maryland 21201-1595. UMMC operates a hospital at that location under the trade name University of Maryland Medical Center.

3.      Defendant Marpai is a Florida LLC with its principal place of business in Florida. On information and belief, Marpai serves as the administrator for an employee welfare benefit plan (the "Plan") that is governed by ERISA and from which UMMS seeks reimbursement for medical services provided to Mr. Allen, a Plan participant.

4.      Because UMMC has been unable to obtain information regarding the Plan from Marpai, UMMC is presently unable to determine the identity of the Plan or the Plan Sponsor. As a result, UMMC has named John Doe Health Care Plan and John Doe Health Care Plan Sponsor as defendants.

5.      This Court has federal question jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because the action arises under ERISA.

6.      Venue is proper in the District of Maryland under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in this district, including the provision of medical services by UMMC and the accrual of the amounts in controversy.

## FACTUAL BACKGROUND

7.      On or about November 23, 2023, Mr. Allen was admitted to UMMC for treatment of injuries sustained in a motor vehicle accident.

8.      On November 24, 2023, Mr. Allen's sister, Phyllis Allen, executed a Consent for Treatment, Financial Responsibility and Healthcare Operations (the "Consent") on Mr. Allen's behalf.

9.      The Consent contains the following assignment of benefits:

> **INSURANCE CERTIFICATION AND ASSIGNMENT**: I hereby certify that the information given by me in applying for payment under titles XVIII and XIX of the Social Security Act and/or by any third party payer(s) is correct. I assign to HOSPITAL all benefits for hospital care due to me under the terms of said policies and programs but not to exceed the regular charges for similar services. I assign payment to the physician(s) rendering medical services and I assign payment for the unpaid charges of the physician(s) for whom HOSPITAL is authorized to bill on behalf.

10.     UMMC provided emergency, inpatient, surgical, diagnostic, and associated hospital services to Mr. Allen from November 23, 2023 through March 30, 2024.

11.     The charges for the hospital care, treatment, and services furnished to Mr. Allen during this period total $1,374,614.24.

12.     On July 3, 2024, Mr. Allen died as a result of the injuries sustained in the November 23, 2023, motor vehicle accident.

13.     Upon information and belief, at all times relevant to this action, Mr. Allen was a participant in the Plan.

14.     Upon information and belief, Marpai is the administrator of the Plan because Marpai was designated as "plan administrator" in the plan documents and/or exercises sufficient discretionary authority over plan management, administration, or assets that it is a functional fiduciary with plan administrator responsibilities.

15.     UMMC timely submitted claims to Marpai for reimbursement under the Plan. Those claims were numbered: 224-0000178181-00; 224-0000000464-00; 224-0000060053-00; 224-0000140131-00; and 224-0000178292-00.

3

16.     In response, Marpai issued "electronic remittance advices" that lacked specific reasons for non-payment and stated only "CO-227 - Info Requested from Patient/Insured Not Provided/Incomplete."

17.     On August 20, 2024, UMMC referred the subject claims to R1/Cloudmed ("R1"), a company that provides revenue cycle management services for UMMC, including claims denial support and appeals.

18.     On August 21, 2024, a Marpai representative informed R1 that the subject claims had been denied because a third-party liability form[1] had not been completed. R1 attempted to contact Mr. Allen to request his assistance in completing the third-party liability form, but was informed by Phyllis Allen that Mr. Allen had died in July 2024.

19.     Between August 2024 and January 2025, R1 contacted Marpai on multiple occasions, submitted requested documentation, and attempted to resolve the subject claims. Despite those efforts, Marpai continued to assert that additional documentation was needed.

20.     On February 20, 2025, R1 received a letter from Marpai that provided:

> We are in receipt of the appeal submitted by your office. Marpai Health has requested information from the member regarding third party information. To date, this information has not been received. Once the information is received from the member, all claims will be reconsidered.

21.     In March and April of 2025, R1 continued to engage with Marpai to resolve the claims. In response, Marpai continued to assert that it needed additional information from the individual holding Mr. Allen's power of attorney or the executor of Mr. Allen's estate.

22.     On April 24, 2025, R1 and UMMC sent a written demand for payment to Marpai's claims department. R1 explained that Marpai had failed to comply with 29 U.S.C. §§ 1133,

---

[1] Marpai has at various times referred to a "third-party liability form," a "subrogation form," and a "reimbursement of benefits form." On information and belief, these all refer to the same form.

4

1185e(a)(1)(C)(iv)(I), and 1185e b)(1)(C) by issuing neither payment nor a proper notice of denial of payment.

23.     On three occasions in April and May 2025, R1 attempted to contact Phyllis Allen, Mr. Allen's sister, to obtain her cooperation in resolving the claims submitted to Marpai. On May 5, 2025, Ms. Allen expressed frustration regarding insurance and paperwork issues and advised that she would no longer do anything to assist R1 or UMMC.

24.     On May 5, 2025, R1 contacted Marpai to request contact information for its subrogation department.

25.     On May 6, 2025, R1 contacted the Killian Law Group, the firm retained by Mr. Allen's family to investigate and pursue potential legal action arising from the November 23, 2023 motor vehicle accident. A representative from the Killian Law Group advised that an estate had been opened and letters of administration had been sent to Marpai, and also provided R1 with contact information for Davies Subrogation Management ("Davies Subrogation"), who was apparently responsible for managing subrogation-related matters for Marpai.

26.     On May 6, 2025, R1 contacted Davies Subrogation and a Subrogation Examiner from Marpai. Marpai's Subrogation Examiner advised that the subject claims were not paid because Marpai never received a completed subrogation form on behalf of Mr. Allen. Marpai's Subrogation Examiner further advised that after receiving the letter of representation from the Killian Law Group, Marpai sent a copy of the subrogation form to the Killian Law Group and explained that the claims would not be reconsidered until that form was executed and returned. Marpai's Subrogation Examiner stated that she never received the completed form.

5

27.    On May 19, 2025, R1 contacted the Killian Law Group again and advised that the outstanding claims had not been paid because the subrogation form had not been executed and returned to Marpai.

28.    Upon information and belief, Marpai asserted a lien against the proceeds of any recovery made by the Killian Law Group on behalf of Mr. Allen's estate.

29.    In December 2025 and January 2026, UMMC, through undersigned counsel, contacted Marpai's Subrogation Examiner and a representative from Davies Subrogation via email. On four occasions, undersigned counsel asked to be put in touch with a lawyer in Marpai's legal department to discuss and hopefully resolve the outstanding claims. Neither Marpai nor Davies Subrogation responded to these requests.

30.    On January 16, 2026, UMMC, through undersigned counsel, sent a letter to Marpai requesting, among other things, the plan document or plan description in effect for the relevant period, the latest updated summary plan description, and any contract or other instruments under which the Plan is established or operated. These requests were made pursuant to 29 U.S.C. § 1024(b)(4). UMMC also requested that Marpai provide contact information for Mr. Allen's plan sponsor.

31.    On January 23, 2026, UMMC, through undersigned counsel, followed up with Marpai via email.

32.    To date, UMMC has received no response from Marpai to its request for plan documents, no response from Marpai to its repeated emails, no payment from Marpai for the claims identified above, and no written explanation from Marpai regarding its failure to pay those claims.

## <u>COUNT ONE</u>
(Failure to Pay Benefits under 29 U.S.C. § 1132(a)(1)(B))

33. UMMC repeats and realleges each of the allegations contained in paragraphs 1-32 as if fully set forth herein.

34. Under ERISA, Mr. Allen possesses rights and claims against the Plan, including the right to be reimbursed for the medical services provided by UMMC.

35. Mr. Allen's rights under the Plan were assigned to UMMC, including the right to bring this cause of action.

36. Upon information and belief, Marpai improperly denied payment for the claims submitted by UMMC in violation of the Plan's terms and ERISA's claims-procedure regulations, *see* 29 C.F.R. § 2560.503-1.

37. Pursuant to 29 U.S.C. § 1132(a)(1)(B), UMMC, as Mr. Allen's assignee, seeks to enforce Mr. Allen's rights under the Plan and recover payment for the medical services provided to Mr. Allen.

**WHEREFORE**, UMMC prays that judgment be entered against Defendants as follows:

1. for the principal sum to be proven at trial for the unpaid claims, the billed charges for which total approximately $1,374,614.24;

2. for pre- and post-judgment interest;

3. for reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1); and

4. such other and further relief as the Court deems just and proper.

### COUNT TWO
(Failure to Timely Pay or Deny Claims for Emergency Services
in Violation of 29 U.S.C. § 1185e(a)(1)(C)(iv) - No Surprises Act)

38.     UMMC repeats and realleges each of the allegations contained in paragraphs 1-37 as if fully set forth herein.

39.     Under 29 U.S.C. § 1185e(a)(1)(C)(iv)(I), a health plan providing coverage for services in a hospital emergency department must, if a participant is provided emergency services by a nonparticipating provider or nonparticipating emergency facility, "not later than 30 calendar days after the bill for [emergency] services is transmitted by [a] provider or facility, send[ ] to the provider or facility, as applicable, an initial payment or notice of denial of payment[.]"

40.     Under 29 U.S.C. § 1185e(b), a health plan providing coverage for non-emergency services must, if a patient is provided non-emergency services by a nonparticipating provider at a participating health care facility, "not later than 30 calendar days after the bill for such items or services is transmitted by [a] provider, … send to the provider an initial payment or notice of denial of payment[.]"

41.     Marpai issued electronic remittance advices for each claim stating "CO-227 - Info Requested from Patient/Insured Not Provided/Incomplete," without further explanation of what information was needed. These electronic remittance advices do not qualify as notices of denials of payment under ERISA because they do not include the specific reason or reasons for the denial of payment, a reference to the specific plan provisions on which the determination was based, or an explanation of appeal rights.

42.     UMMC is a nonparticipating healthcare facility that provides both emergency and non-emergency services.

43.     Marpai violated 29 U.S.C. § 1185e(a)(1)(C)(iv)(I) and (b)(1)(C) by failing to either pay claims or issue denials of payment within 30 days after the bills for the services at issue were sent to Marpai.

**WHEREFORE**, UMMC prays judgment be entered against Defendants as follows:

1.     for the principal sum to be proven at trial for the unpaid claims, the billed charges for which total approximately $1,374,614.24;

2.     for pre- and post-judgment interest;

3.     for reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1); and

4.     such other and further relief as the Court deems just and proper.

Dated: March 17, 2026                    Respectfully submitted,


*/s/ Ezra S. Gollogly*
Ezra S. Gollogly (Bar No. 28088)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
egollogly@kg-law.com
(410) 752-6030

*Attorneys for Plaintiff University of Maryland Medical Center, LLC*

9